UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

FILED
97 JUL -2 AM 10: 25
U.S. DIST....
N.D. OF ALABAMA

Rebecca Mayo, )
    Plaintiff(s); )
     )
-vs )    Nos. CV 96-P-0023-S
     )
The Board of Trustees of the University )
  of Alabama )
    Defendant(s). )

ENTERED
JUL 0 2 1997

## OPINION

For the following reasons, the Defendant's Motion for Summary Judgment is hereby GRANTED..

### Facts[1]

The Plaintiff Rebecca Mayo ("Mayo"), a female, was employed by the University of Alabama at Birmingham as a Case Manager in the Comprehensive Child Development Program, a new federally-funded intervention program for substance-exposed families. Mayo and another employee regularly visited families and provided a variety of assistance. During Mayo's employment, several incidents were reported to Dr. Perry-Rooks, one of her supervisors, involving perceived problems with Rebecca's performance of her duties and her judgment in client matters. On April 6, 1994, Mayo called Perry-Rooks and told Perry-Rooks that her father had suffered a heart attack. She told Perry-Rooks that she had taken her father to St. Vincent's Hospital and he was scheduled for an angioplasty. After this initial phone call, Perry-Rooks called

---

1. The recitation of "facts" is viewed in the light most favorable to the Plaintiff.

1

St. Vincent's to ask Mayo when she would be returning to work and to discuss the distribution of her caseload if Mayo would not be able to return to work. Perry-Rooks was unable to locate Mayo at the hospital and was told by hospital staff that no one matching the description of Mayo's father had been admitted to the hospital or scheduled for surgery. Perry-Rooks was told by another employee that On April 7, Mayo reported to work and when told by Perry-Rooks that she had unable to reach Mayo at St. Vincent's, Mayo then stated that her father was not at St. Vincent's but rather at Brookwood Hospital and gave his purported room number. When Perry-Rooks phoned Brookwood and was told that Mayo's father was not there, Mayo admitted that she had lied about the entire incident. Mayo was terminated for abandonment of her caseload and for unexplained absence from work.

Lamar Payne, a male employee, was on vacation in Missouri and scheduled to return to work on April 6, 1994. On April 6, Payne called the office and informed the secretary that he would not be in that day because he was still in Missouri attending to personal business. On the morning of April 7, he called the office and informed the secretary that he would be in later that day. Because he had not request leave for that day, Dr. Perry-Rooks phoned him and told him to report immediately. He called her from a client's residence at approximately 1:24 p.m. but refused to leave the telephone number. Payne was suspended for three days without pay.

Mayo filed suit alleging gender discrimination under Title VII. The Defendant Board of Trustees of the University of Alabama ("Board of Trustees") filed a Motion for Summary Judgment.

## ANALYSIS

Under Title VII, a plaintiff must make a prima facie showing of discrimination. Where

2

the plaintiff complains of disparate treatment regarding disciplinary action, he can establish a prima facie case if he can show that an action was taken against him but not against one outside his class who is similarly situated for violating the same work rule. *See, Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982). The activity of the plaintiff must have been nearly identical to that of the other employee who was not disciplined. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181 (1984). If the plaintiff makes this prima facie showing, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

The Board of Trustees argues that Mayo fails to establish a prima facie case of discrimination because she cannot point to a comparator who was treated differently. Mayo alleges in her complaint that the actions taken against her were motivated by gender discrimination. Mayo argues that she and Payne engaged in the same conduct but were treated differently. The Board of Trustees argues that Mayo's conduct leading to her termination was different and more severe than Payne's and warranted different treatment. The Board of Trustees points to the fact that, while Payne did not report to work on the day he was scheduled to return, he called in and told the secretary that he would not be there because he was still conducting personal business in Missouri. Payne was not scheduled to see any clients on April 6. There is no evidence that Payne lied about his whereabouts or why he was out of the office. There is some evidence that he was rude to the person he spoke with and that he may have hung up on Dr. Perry-Rooks during a telephone conversation.

On the other hand, the Board of Trustees argues, Mayo freely admits that she was lying to her supervisor and that when she was confronted with the first lie, she told another lie. Only

3

when she had been confronted with the second lie, did she admit that she just wanted to take the day off. The Board of Trustees argues that Mayo's job description required that she perform many of her duties outside of the office and without direct supervision. Such a position, they argue, requires a degree of trust between the supervisor and the employee which makes Mayo's conduct both different and more severe than Payne's conduct.

The Court agrees that the behavior engaged in by Mayo was not nearly identical to that engaged in by Payne. Although there is some dispute about whether or not Mayo had scheduled to meet clients on the morning of April 6, her lying several times to her supervisor about her whereabouts was different from Payne's telephone call. Essentially, Mayo argues that she just had an unexcused absence from work and she had sick time available to her. Mayo argues that she should have been given progressive discipline as Payne was given rather than terminated or that both she and Payne should have been terminated. While the result of Mayo's and Payne's actions may have been the same, an unexcused absence, their behavior leading to the unexcused absence was not nearly identical.[2/] Therefore, Mayo has failed to establish a prima facie case under Title VII.

In its brief, the Board of Trustees argues that, even if Mayo makes her prima facie showing as to the gender discrimination claims, the Defendant has articulated a legitimate, non-discriminatory reason for terminating Mayo. The Board of Trustees's articulated reason for terminating Mayo was being absent without good cause and unacceptable job performance. None of these reasons is facially discriminatory.

---

2. In her brief, Mayo argues that Payne lied on his employment application by stating that he had not been convicted of a felony. A review of Payne's application reveals that he in fact stated that he had been convicted of a felony. Payne apparently listed the most recent conviction, one for public intoxication, on his application and a note regarding an earlier conviction had been included in his personnel file.

4

Under *Burdine*, if the Defendant has articulated a non-discriminatory reason for its action, the plaintiff must come forward with evidence that the stated reason is a pretext or "sham." In this case, Mayo claims that she was performing her duties satisfactorily. She point to the fact that she had not been given a written reprimand as evidence of this. However, the Board of Trustees has produced substantial evidence that Perry-Rooks was aware of perceived problems Mayo was having with her clients, absenteeism, and other employees and evidence that Perry-Rooks believed that Mayo had been both verbally and in writing counseled about these problems. Mayo does not produce evidence disputing that Perry-Rooks relied on these reports of deficient performance when she terminated Mayo.[3/] Mayo simply argues that these perceptions were not correct. Under Title VII, the employer need not demonstrate that its perception of the employee's behavior is accurate but only that it honestly believed the perception to be accurate. *See, Hawkins v. Ceco Corp.*, 883 F.2d 977 (11th Cir. 1989). The plaintiff must still produce substantial evidence of pretext. In this case, Mayo has not produced substantial evidence from which to infer that Perry-Rooks believed the reports of Mayo's problems to be incorrect.

The only potentially direct evidence of discrimination was made by a non-decision maker, Karen Watkins, the project manager and not the decision maker who terminated Mayo. Mayo states that Watkins referred to Payne as the "token male" and she argues that this statement is evidence that he was being treated more favorably. However, stray remarks of non-decision makers are not relevant unless they can be connected to the decision maker or those by decision makers which are unrelated to the decision making process. *See, Price Waterhouse v. Hopkins*,

---

3. Mayo argues that the fact that these problems were not documented in her file is evidence of pretext but the Defendant has provided substantial evidence that the problems were reported orally to Perry-Rooks.

490 U.S. 228, 277 (1989). Therefore, Watkins' remark is not direct evidence of discrimination.

Based on the foregoing reasons, the Court finds that there is no genuine issue of material fact and the Defendant's Motion for Summary Judgment on the Plaintiff's claims of discrimination is hereby GRANTED.

Date: July 2, 1997

Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Jeff Bennitt
    Ms. Robyn G. Bufford
    Ms. Katherine S. Weed
    Mr. Gary C. Smith